IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **WESLEY K. WYATT; ANNA WYATT; and THE FINANCIAL GREENHOUSE,**<br><br>**Plaintiffs**<br><br>v.<br><br>**TERRANCE A. KEATING and JOHN DOE,**<br><br>**Defendants** | **CIVIL NO. 1:CV-03-0726** |

## **M E M O R A N D U M**

Before the court is Defendant Keating's motion for summary judgment. Keating asserts that summary judgment is appropriate because there is no genuine issue as to whether the Pennsylvania Insurance Department ("the Department") refused to reinstate Wesley Wyatt's insurance license. Because a reasonable fact-finder could only conclude that the Department did not refuse to reinstate Mr. Wyatt's license, the court will grant Keating's motion.

**I.      Factual and Procedural Background**

Plaintiffs filed the instant action on April 30, 2003 alleging violations of 42 U.S.C. § 1983 as well as their rights under state law. Plaintiffs claimed that their Commerce Clause and First, Fourth, and Fourteenth Amendment rights were violated as a result of the Department's decision to revoke Mr. Wyatt's license to sell insurance. Additionally, Plaintiffs asserted a tortious interference with contractual rights claim under state law.

In response to Plaintiffs' Complaint, the original defendants, Keating, Jefferson-Pilot Insurance Company, American National (Legacy) Inc., and Life USA (Alliance) Inc., filed motions to dismiss. On October 1, 2003, the court granted these motions on the ground that Plaintiffs' claims were barred by the statute of limitations. In so ruling, the court rejected Plaintiffs' arguments that certain exceptions to the statute of limitations applied in this case, namely exhaustion requirements, the continuing violations doctrine, and the *Younger* abstention doctrine. The court also granted Plaintiffs leave to amend their Complaint as to whether the Department's alleged refusal to reinstate Mr. Wyatt's license following the Commonwealth Court of Pennsylvania's reversal of the Department's revocation was a discriminatory act that occurred within the statute of limitations.

On November 4, 2003, Plaintiffs filed an Amended Complaint under 42 U.S.C. § 1983. In their Amended Complaint, Plaintiffs allege that Keating, who is Deputy Chief Counsel for the Department, a John Doe defendant, and others at the Department refused to reinstate Mr. Wyatt's license and refused to return a $1,000 civil fine that had been levied upon him and therefore, violated Plaintiffs' Commerce Clause and First, Fourth, and Fourteenth Amendment rights.[1]  (Am. Compl. ¶¶ 1, 11,

---

[1] Plaintiffs' counsel is apparently confused about which parties remain as plaintiffs in the instant action. The Amended Complaint names Wesley K. Wyatt, Anna Wyatt, and The Financial Greenhouse as plaintiffs in the caption. (Am. Compl. at 1.) The Amended Complaint then lists Wesley Wyatt, Anna Wyatt, and The Financial Greenhouse as parties to the action. (*Id*. ¶¶ 6, 7, 8.) Further, Plaintiffs' counsel states that Keating's refusal to reinstate Mr. Wyatt's license financially injured his wife, Anna Wyatt, and that the "injuries to Anna and the Greenhouse were foreseeable." (*Id*. ¶¶ 21, 22.) However, Plaintiffs' counsel also notes that "Anna Wyatt's rights, if any, have been ended by this Court" and refers to Anna Wyatt and the Financial Greenhouse as former plaintiffs. (*Id*. ¶ 21, 23.) Nevertheless, Plaintiffs' counsel requests damages on behalf of "[t]he plaintiffs . . . in their own right and jointly." (*Id*. ¶ 28.)

In one of his briefs to the court, Plaintiffs' counsel attempted to provide some clarification on the matter. He explained that his understanding was that the claims against Anna Wyatt and The Financial

(continued...)

27, 28.) Specifically, Plaintiffs allege that Defendants violated the following constitutional rights: (1) "a 1st Amendment right to do business and to associate," (2) "a right under the Commerce Clause," (3) a "14th Amendment substantive due process right to further his business ends," (4) a right under the First Amendment "to pursue his chosen profession," (5) a Fourteenth Amendment right to be "devoid of unreasonable government interference," (6) a Fourth Amendment right "not to be maliciously and improperly prosecuted," and (7) a Fourteenth Amendment right to equal protection under the law.[2]  (*Id*. ¶¶ 1, 10, 11.)  Plaintiffs also raised a state law claim of tortious interference with contractual relations.[3]  (*Id*. ¶ 29.)

---

[1](...continued)
Greenhouse had been dismissed because the court, in its October 1, 2003 memorandum, limited the scope of Plaintiffs' leave to amend their Complaint to the issue of "whether the Department's refusal to reinstate Mr. Wyatt's insurance license was a discriminatory act that occurred within the statute of limitations." *Wyatt v. Keating*, No. 1:CV-03-0726, slip op. at 14 n.11 (M.D. Pa. Oct. 1, 2003). In interpreting this limitation, Plaintiffs' counsel posited: "As plaintive [sic] understands this language the only possible claim remaining would be Mr. Wyatt's claim against Mr. Keating?" (Pls.' Br. in Opp'n to Keating's Mot. to Dismiss the Am. Compl. at 8.) Plaintiffs' counsel, however, overlooked language in the October 1, 2003 memorandum that states: "The court will grant *Plaintiffs* leave to amend *their* complaint to allow *them* the opportunity to address [whether the Department refused to reinstate Mr. Wyatt's license]." *Wyatt*, No. 1:CV-03-0726 at 14 n.11 (emphasis added). In fact, the court used similar language several times throughout the memorandum and order, each time using the plural form of "plaintiff." *Id*. at 17-18, 19, 19 n.13. Thus, the court, while dismissing Anna Wyatt's and The Financial Greenhouse's claims relating to the revocation of Mr. Wyatt's license, clearly allowed Anna Wyatt and The Financial Greenhouse to pursue claims relating to the Department's alleged refusal to reinstate Mr. Wyatt's license. Accordingly, the court will read Plaintiffs' Amended Complaint to include Anna Wyatt and The Financial Greenhouse as plaintiffs.

[2]Even though Plaintiffs use the singular form of nouns and pronouns to describe the alleged constitutional violations, the court will assume that Plaintiffs intended the § 1983 claims to pertain to all of the plaintiffs, especially in light of the fact that the Amended Complaint can be read to include Anna Wyatt and The Financial Greenhouse as part of the § 1983 claims. *See supra* note 1.

[3]Plaintiffs attempt to raise allegations in their Amended Complaint that relate to the *revocation* of Mr. Wyatt's license as opposed to the *failure to reinstate* his license. For instance, Plaintiffs assert that "Mr. Keating and others at the insurance department set in motion a series of unjust procedures that lead [sic] to a revocation of Mr. Wyatt's license." (Am. Compl. ¶ 19.) To the extent Plaintiffs' allegations in their Amended Complaint relate to the revocation of Mr. Wyatt's license, those claims have already been dismissed in the

(continued...)

In response to Plaintiffs' Amended Complaint, Keating filed a motion to dismiss or, in the alternative, for summary judgment.  After this motion was fully briefed, the court reviewed the parties' arguments and determined that Keating's motion should be treated as a motion for summary judgment.  *See Wyatt v. Keating*, No. 1:CV-03-0726 (M.D. Pa. Jan. 30, 2004) (order providing notice to the parties that Keating's motion would be treated as a motion for summary judgment).  Accordingly, the court allowed the parties to submit supplemental briefing on the issues.  *Id*.

Keating alleges the following facts in his supplemental brief in support of his motion for summary judgment.  Following the Commonwealth Court's April 30, 2001 reversal of the Department's revocation of Mr. Wyatt's license, Jack Yanosky, the Director of the Department's Bureau of Producer Services[4] and the individual responsible for insurance licensing, put Mr. Wyatt's license into active status on July 3, 2001.  (Ex. A in Supp. of Keating's Suppl. Br. in Supp. of Mot. for Summ. J., Yanosky Aff. ¶¶ 1, 3, 9.)  In doing so, Mr. Yanoksy made the activation retroactive to the date of the Commonwealth Court's decision, April 30, 2001.  (*Id*. ¶ 9.)  When Mr. Yanosky activated Mr. Wyatt's license in the Department's database, the information was automatically submitted to a national "Producer Database," which insurance companies use to learn an individual's license status.  (*Id*. ¶ 10.)  Mr. Yanoksy also personally mailed a copy of Mr. Wyatt's license to him via first-class mail to his last known address on July 3, 2001.  (*Id*. ¶ 11.)  Mr. Wyatt had an

---

[3](...continued)
court's October 1, 2003 memorandum and order and will not be addressed here.

[4]Under 40 Pa. Cons. Stat. § 310.1, a producer is "[a] person that sells, solicits or negotiates contracts of insurance."

obligation to notify the Department if his address had changed. (*Id*. ¶ 12.) Keating attached a copy of the reinstated license that was sent to Mr. Wyatt to his supplemental brief. (*See* Ex. B in Supp. of Keating's Suppl. Br. in Supp. of Mot. for Summ. J.; *see also* Yanosky Aff. ¶ 14.)

Mr. Wyatt's reinstated license was set to expire on February 2, 2002. (Ex. A in Supp. of Keating's Suppl. Br. in Supp. of Mot. for Summ. J., Yanosky Aff. ¶ 15.) The Department mailed a renewal form to Mr. Wyatt in November 2001. (*Id*. ¶ 17.) Mr. Wyatt completed the form, signed and dated it, and returned it along with a $36 renewal fee on November 27, 2001. (*Id*. ¶ 18.) Keating attached a copy of Mr. Wyatt's license renewal form to his supplemental brief. (*See* Ex. C in Supp. of Keating's Suppl. Br. in Supp. of Mot. for Summ. J.; *see also* Yanosky Aff. ¶ 19.) Following receipt of Mr. Wyatt's renewal form, the Department sent him a copy of his renewed license. (Ex. A in Supp. of Keating's Suppl. Br. in Supp. of Mot. for Summ. J., Yanosky Aff. ¶ 20.) Keating attached a copy of Mr. Wyatt's renewed license to his supplemental brief. (*See* Ex. D in Supp. of Keating's Suppl. Br. in Supp. of Mot. for Summ. J.; *see also* Yanosky Aff. ¶ 21.)

In order to maintain an insurance license, Mr. Wyatt must complete continuing education requirements. (Ex. A in Supp. of Keating's Suppl. Br. in Supp. of Mot. for Summ. J., Yanosky Aff. ¶ 32.) According to the Department's continuing education database, Mr. Wyatt participated in courses on June 11-12, 2001, January 13-16, 2002, and June 24, 2002. (*Id*.) Keating attached Mr. Wyatt's continuing education transcript to his supplemental brief. (*See* Ex. G in Supp. of Keating's Suppl. Br. in Supp. of Mot. for Summ. J.; *see also* Yanosky Aff. ¶ 34.)

In addition to maintaining a continuing education transcript, the Department maintains a license history for each producer. (Ex. A in Supp. of Keating's Suppl. Br. in Supp. of Mot. for Summ. J., Yanosky Aff. ¶ 36.) Following the Commonwealth Court's decision to reverse the Department's revocation of Mr. Wyatt's license, the Department updated Mr. Wyatt's license history to "Active" status as of April 30, 2001. (*Id*. ¶ 37.) The license history also indicates that Mr. Wyatt has an appointment with Fidelity and Guaranty Life Insurance Company, which means that he is employed to sell insurance on its behalf. (*Id*. ¶¶ 38-39.) In order to sell insurance in the Commonwealth, a person must be licensed. 40 Pa. Cons. Stat. § 310.3(a). Keating attached a copy of the license history to his supplemental brief. (*See* Ex. H in Supp. of Keating's Suppl. Br. in Supp. of Mot. for Summ. J.; *see also* Yanosky Aff. ¶ 36.)

As for the $1,000 civil fine levied upon Mr. Wyatt, Keating offers the affidavit of Jill A. Keiser, the Administrative Officer for the Financial Enforcement Section of the Office of the Attorney General. (Ex. I in Supp. of Keating's Suppl. Br. in Supp. of Mot. for Summ. J., Keiser Aff. ¶ 1.) The Financial Enforcement Section ("the Section") collects all delinquent financial obligations owed to the Commonwealth of Pennsylvania. (*Id*. ¶ 5.) According to Ms. Keiser's records, the Department referred Mr. Wyatt's case to the Section in early 2001 for collection of a $1,000 civil fine. (*Id*. ¶ 7.) The Section attempted to collect the $1,000 by sending Mr. Wyatt two letters, but received no response. (*Id*. ¶ 8.) The Section then referred Mr. Wyatt's case to a collection agency. (*Id*. ¶ 9.) Ultimately, two different collection agencies attempted to collect the $1,000 fine from Mr. Wyatt, but were unsuccessful. (*Id*.) On December 16, 2002, the Section notified the Department that

it was ceasing collection efforts against Mr. Wyatt and instructed the Department to close Mr. Wyatt's account in their records. (*Id*. ¶ 10.)

In response to Keating's factual allegations, Plaintiffs offer an affidavit prepared by Mr. Wyatt.[5] (*See* Ex. P-1 in Supp. of Pls.' Br. in Opp'n to Keating's Suppl. Br.)  In the affidavit, Mr. Wyatt states: "To the best of my knowledge, I did not receive any notice of my PA license being reinstated at any time." (*Id*.)  Further, he relates that although he filled out a renewal form in November 2001, he received nothing in return. (*Id*.)  Finally, he asserts that he has not received notice that the Department corrected wrong information in "inspection reports" and requests the Department to send notification to life insurance companies that his license was reinstated. (*Id*.)

## II.     **Legal Standard**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

---

[5] In their brief to the court, Plaintiffs refer to Exhibit P-1 as an affidavit; however, the document, at first glance, resembles a notarized letter more than an affidavit. Under Federal Rule of Civil Procedure 56(e), an affidavit must (1) be made on personal knowledge, (2) set forth such facts as would be admissible in evidence, and (3) show affirmatively that the affiant is competent to testify to the matters stated therein. Additionally, "[a]n affidavit is a statement reduced to writing and the truth of which is sworn to before someone who is authorized to administer an oath." *Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir. 1985) (internal quotation omitted). Although Exhibit P-1 does not affirmatively lay a foundation that the three Rule 56(e) requirements are met, the court finds that, in reviewing the substance of the document and the fact that it is notarized, the document can be construed as an affidavit, albeit a crude one. *See Williams v. Hager Hinge Co.*, 916 F. Supp. 1163, 1168-69 (M.D. Ala. 1995) (concluding that a five-page letter with a notarized cover sheet met the requirements of Rule 56(e)).

entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. *Id.* at 249. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir. 1985); *see also Reeder v. Sybron Transition Corp.*, 142 F.R.D. 607, 609 (M.D. Pa. 1992).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, and designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322-23. " 'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.' " *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**III.      Discussion**

In its October 1, 2003 memorandum and order, the court granted Plaintiffs leave to amend their complaint to assert claims relating to the Department's alleged constitutional violations in refusing to reinstate Mr. Wyatt's license. *Wyatt*, No. 1:CV-03-0726 at 19. Plaintiffs filed an Amended Complaint alleging that Keating and a John Doe defendant, acting on behalf of the Department, never reinstated Mr. Wyatt's license or reimbursed his $1,000 civil fine in violation of his constitutional rights and state law. (Am. Compl. ¶¶ 21, 24, 25.) Keating, however, argues in his motion for summary judgment that Plaintiffs cannot prove that he refused to reinstate Mr. Wyatt's license because the evidence overwhelming shows that Mr. Wyatt's license was reinstated. Further, Keating asserts that the Department did not refuse to return Mr. Wyatt's $1,000 civil fine because it never collected the fine in the first place. For the reasons set forth below, the court agrees with Keating's arguments; therefore, the court will grant his motion for summary judgment.

   **A.      Refusal to Reinstate**

The court limited the scope of Plaintiffs' Amended Complaint to the issue of "whether the Department's refusal to reinstate Mr. Wyatt's license was a discriminatory act that occurred within the statute of limitations." *Wyatt*, No. 1:CV-03-0726 at 19. Upon review of the affidavits and documents submitted by the parties, the court finds that the Department, and those acting on behalf of it, could not have discriminated against Mr. Wyatt by refusing to reinstate his license because they did in fact reinstate his license. In other words, there is not a sufficient evidentiary basis that would allow a reasonable fact-finder to conclude that the Department never restored Mr. Wyatt's license, as Plaintiffs allege in their Amended

9

Complaint.  (*See* Am. Compl. ¶¶ 21, 24, 25.)  First, Mr. Wyatt's license history demonstrates that his license was in active status as of April 30, 2001.  (*See* Ex. H in Supp. of Keating's Suppl. Br. in Supp. of Mot. for Summ. J.)  Second, Mr. Yanoksy, the Director of the Bureau of Producer Services, stated in a sworn affidavit that he personally put Mr. Wyatt's license into active status and made the activation date retroactive to April 30, 2001.  (Ex. A in Supp. of Keating's Suppl. Br. in Supp. of Mot. for Summ. J., Yanoksy Aff. ¶ 10.)  Third, Keating produced a copy of the reinstated license.  (*See* Ex. B in Supp. of Keating's Suppl. Br. in Supp. of Mot. for Summ. J.; *see also* Yanoksy Aff. ¶ 14.)  Fifth, Mr. Wyatt renewed his reinstated license.  (Ex. C in Supp. of Keating's Suppl. Br. in Supp. of Mot. for Summ. J.; *see also* Yanoksy Aff. ¶¶ 18-21.)  Sixth, Mr. Wyatt completed continuing education requirements to maintain his license.  (Ex. G in Supp. of Keating's Suppl. Br. in Supp. of Mot. for Summ. J.; *see also* Yanoksy Aff. ¶ 35.)  Finally, Mr. Wyatt has an appointment with a life insurance company to sell policies on its behalf, which requires a valid license.  (Ex. A in Supp. of Keating's Suppl. Br. in Supp. of Mot. for Summ. J., Yanoksy Aff. ¶¶ 38-41.)  In short, there is a plethora of evidence that demonstrates that the Department reinstated Mr. Wyatt's license and that Mr. Wyatt acted as though his license had been reinstated.

        In an attempt to counter the profuse amount of evidence showing that Mr. Wyatt's license has been reinstated, Plaintiffs make the following arguments.  First, the license history does not clearly indicate that Mr. Wyatt's license was reinstated.  Second, Mr. Wyatt stated in his affidavit that he never received notice of his license being reinstated and that even though he sent his renewal form in, he never received anything in return.  Finally, the Department's two-month delay in activating

Mr. Wyatt's license is evidence of their refusal to reinstate.  The court will address each argument in turn.

Plaintiffs contend that Mr. Wyatt's license history does not reflect that his license was reinstated on April 30, 2001.  They argue: "Even a rocket scientist with a nuclear physicist or two thrown in would not be able to figure out how [the license history] demonstrates to anyone that Mr. Wyatt's license was reinstated." (Pls.' Br. in Opp'n to Keating's Mot. to Dismiss the Am. Compl. at 4.)  The license history, however, while not using the word "reinstated," plainly demonstrates that Mr. Wyatt's license was active as of April 30, 2001.  Under the category "Licenses and Qualifications," the first major heading of the document, the report shows that Mr. Wyatt has a "Resident Agent" license that is in "Active" status effective "April 30, 2001."  (*See* Ex. H in Supp. of Keating's Suppl. Br. in Supp. of Mot. for Summ. J.)  Nevertheless, Plaintiffs object to the fact that below the line showing that Mr. Wyatt's license is active, there is an entry showing that his license was inactive as of September 5, 2000 due to revocation.  (*Id*.)  Plaintiffs argue that this entry is misleading and should be removed from the report.  Plaintiffs' argument, however, has little to do with the Department's alleged discriminatory conduct in refusing to reinstate Mr. Wyatt's license.  In fact, Plaintiffs have not come forward with any evidence to suggest that this entry was motivated by discriminatory animus or anything other than mere bureaucratic procedure.  *See* Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an . . . adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.").

Next, Plaintiffs offer Mr. Wyatt's affidavit for the proposition that Mr. Wyatt never received notice of his license being reinstated at any time and that although he filled out a renewal form in November 2001, he received nothing in return. (*See* Ex. P-1 in Supp. of Pls.' Br. in Opp'n to Keating's Suppl. Br.)  As an initial matter, the court notes that Plaintiffs' Amended Complaint alleges that the Department refused to reinstate Mr. Wyatt's license, not that the Department discriminated against Mr. Wyatt by refusing to *notify* him that his license was reinstated.  Therefore, the salient issue is whether the Department restored Mr. Wyatt's license to active status.  Nonetheless, to the extent Plaintiffs' argue that the failure to notify was essentially a refusal to reinstate because Mr. Wyatt never knew about the reinstatement, a great deal of evidence exists to suggest that Mr. Wyatt in fact had notice that his license was reinstated.  Mr. Yanosky stated that he personally mailed a copy of Mr. Wyatt's reinstated license to him at his last known address and that Mr. Wyatt is required to notify the Department of changes in his address.  (Ex. A in Supp. of Keating's Suppl. Br. in Supp. of Mot. for Summ. J., Yanoksy Aff. ¶¶ 11-12.)  Additionally, Mr. Wyatt acted as though he knew his license had been reinstated.  He completed continuing education requirements as required by the Department.  (*Id*. ¶¶ 32-35.)  He acquired an appointment to sell insurance on behalf of a life insurance company, which by law requires a license.  (*Id*. ¶¶ 38-41.)  And he renewed his license in a timely fashion.  (*Id*. ¶¶ 16-21.)  In his affidavit, Mr. Wyatt contends that he did not receive anything in return after he submitted his renewal form to the Department.  However, he continued to participate in continuing education courses in January and June 2002 after his license was renewed, and he obtained the appointment in June 2003.  (*Id*. ¶¶ 35, 38.)  Indeed, Keating produced a copy of the

renewed license.  (Ex. D in Supp. of Keating's Suppl. Br. in Supp. of Mot. for Summ. J.)  Therefore, the evidence indicates that Mr. Wyatt was aware that his license had been renewed.  In short, Plaintiffs have failed to demonstrate that there is a genuine issue that the Department's alleged failure to notify Mr. Wyatt that his license had been reinstated and later renewed was motivated by discriminatory animus.

Finally, Plaintiffs assert that the Department's roughly two-month delay in activating Mr. Wyatt's license is evidence of its refusal to reinstate his license.  Again, the court notes that Plaintiffs' Amended Complaint does not allege that the two-month delay in activating Mr. Wyatt's licence was a discriminatory act.  Rather, Plaintiffs, in their Amended Complaint, repeatedly contend that the Department *never* reinstated Mr. Wyatt's license.  (Am. Compl. ¶¶ 21, 24, 25.)  Regardless, in their opposition to Keating's summary judgment motion, Plaintiffs fail to offer any evidence that the two-month delay stemmed from discrimination.  *See* Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an . . . adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.").  Keating, however, argues that there was a legitimate reason for the delay.  The Department had thirty days to seek leave to appeal the Commonwealth Court's decision, *see* Pa. R. App. P. 1113, and then it took one month to process the reinstated license.  In sum, the Department's two-month delay in activating Mr. Wyatt's license is not a sufficient evidentiary basis that would allow a reasonable fact-finder to conclude that the Department refused to reinstate Mr. Wyatt's license.

Because Plaintiffs' arguments do not suffice to create a genuine issue of whether Mr. Wyatt's license was reinstated, the court will grant Keating's motion for summary judgment.  In fact, Plaintiffs do not seriously dispute that Mr. Wyatt's license was reinstated.  In their brief in opposition to Keating's supplemental brief, they write:

> During [a conference call between the court and both parties,] the court opined that Mr. [Wyatt's] license had in fact been reactivated.  Upon study plaintiff agrees that the court may be technically correct in its observation, but respectfully offers that the mere technical restoration of the plaintiff's license is really not the issue, or at least the complete issue.

(Pls.' Br. in Opp'n to Keating's Suppl. Br. at 2-3.)  Most of Plaintiffs' arguments go to the Department's alleged failure to notify Mr. Wyatt that his license had been reinstated.  As stated above, notification of Mr. Wyatt's reinstated license is not the real issue before the court, per Plaintiffs' Amended Complaint.  Further, the evidence convincingly demonstrates that Mr. Wyatt did in fact have notice that his license was reinstated.  Nevertheless, a reasonable fact-finder could only conclude that the Department reinstated Mr. Wyatt's license following the April 30, 2001 court decision.  Thus, Keating is entitled to judgment in his favor on this issue.

### B. Refusal to Return the $1,000 Civil Fine

As for Plaintiffs' allegations that the Department refused to return Mr. Wyatt's $1,000 civil fine, the court concludes that a reasonable fact-finder could not return a verdict for Plaintiffs on this issue.  In her affidavit, Jill Keiser, the

Administrative Officer of the Financial Enforcement Section of the Office of the Attorney General, asserts that her records indicate that the Section attempted to collect the $1,000 by sending Mr. Wyatt two letters, but no response was received. (Ex. I in Supp. of Keating's Suppl. Br. in Supp. of Mot. for Summ. J., Keiser Aff. ¶¶ 7-8.)  The Section then referred Mr. Wyatt's case to two different collection agencies, who were unsuccessful in collecting the $1,000 fine.  (*Id*. ¶ 9.)  Finally, on December 16, 2002, the Section ceased collection efforts and instructed the Department to close Mr. Wyatt's account.  (*Id*. ¶ 10.)  Plaintiffs do not set forth any evidence to rebut Ms. Keiser's affidavit.  Mr. Wyatt's affidavit does not address the issue.  Plaintiffs' only argument is that the fact collection efforts continued until December 16, 2002 indicates that the Department was nonresponsive to the April 30, 2001 court decision.  This argument, however, only obfuscates the real issue – the Department never collected the $1,000 in the first place.  Thus, there is no genuine issue of material fact that the Department refused to return the $1,000 civil fine to Mr. Wyatt.

## III.        Conclusion

The court concludes that a reasonable fact-finder could not return a verdict in Plaintiffs' favor on their § 1983 and state law claims.  Therefore, the court finds that Keating's motion for summary judgment should be granted.  The court will dismiss Plaintiffs' claims against Defendants in their entirety.[6]  An appropriate order will issue.

---

[6] Because Plaintiffs have failed to establish the identity of the John Doe defendant, Plaintiffs' claims against this unknown entity will also be dismissed.

                                                s/Sylvia H. Rambo
                                                Sylvia H. Rambo
                                                United States District Judge

Dated: May 27, 2004.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**WESLEY K. WYATT; ANNA WYATT; and THE FINANCIAL GREENHOUSE,**

    **Plaintiffs**

    v.

**TERRANCE A. KEATING and JOHN DOE,**

    **Defendants**

: : : : : : : : : : : : :

CIVIL NO. 1:CV-03-0726

## **O R D E R**

In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT**:

1) Defendant Keating's motion for summary judgment (Doc. 43) is **GRANTED**.

2) Plaintiffs' claims against Defendant John Doe are dismissed.

3) The Clerk of Court shall close the case file.

                                                     s/Sylvia H. Rambo
                                                      Sylvia H. Rambo
                                                      United States District Judge

Dated: May 27, 2004.